UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES AYUR GARANG,<br><br>Petitioner,<br>v.<br><br>TODD BLANCHE, et al.,<br><br>Respondents. | CASE NO. C26-3535JLR<br><br>ORDER |

## I. INTRODUCTION

Before the court is Petitioner James Ayur Garang's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet. (Dkt. # 5); Traverse (Dkt. # 11).) The Government[1] opposes the petition. (Return (Dkt. # 8).) The court has considered the

[1] The Federal Respondents are Attorney General of the United States Todd Blanche, United States Department of Homeland Security Markwayne Mullin, United States Citizenship and Immigration Services ("USCIS") Seattle Field Office Acting Director Julio Hernandez, and USCIS (collectively, the "Government").

parties' submissions, the relevant portions of the record, and the governing law. Being fully informed, the court GRANTS the petition.

## II. BACKGROUND

Petitioner is a native and citizen of Sudan who was admitted to the United States at New York, New York, as a refugee on May 23, 2001. (Subero Decl. (Dkt. # 9) ¶ 3.) He adjusted status to that of a lawful permanent resident on October 10, 2014. (*Id.*) In November 2019, the United States District Court for Southern District of South Dakota convicted Petitioner for conspiracy to distribute a controlled substance and sentenced him to 120 months of incarceration. (*Id.* ¶ 4.) On February 7, 2020, the Government encountered Petitioner at a federal prison in Pennsylvania and filed an immigration detainer with the Bureau of Prisons. (*Id.* ¶ 5.) On November 27, 2020, the Government filed a Notice to Appear, charging removability pursuant to 8 U.S.C. § 1227(a)(2)(B)(i). (*Id.* ¶ 6.) On August 26, 2021, Petitioner filed an application for immigration relief with the York, Pennsylvania Immigration Court. (*Id.* ¶ 7.) On February 16, 2022, the Baltimore Immigration Court, sitting in Pennsylvania, denied Petitioner's requested relief and ordered Petitioner removed to Sudan. (*Id.* ¶ 8; Wong Decl. (Dkt. # 10) ¶ 2, Ex. 3 (IJ Order).) Petitioner subsequently appealed the order of removal to the Board of Immigration Appeals ("BIA"), which remanded the case back to the Immigration Court on July 28, 2022. (Subero Decl. ¶ 8.)

On January 10, 2023, the Government released Petitioner from federal prison and placed him on supervised release for five years; two days later, however, Petitioner was placed in federal immigration custody and held at the Clinton County Correctional

Facility. (*Id.* ¶¶ 9-10.) On March 3, 2023, the Baltimore Immigration Court denied Petitioner's application for relief and again ordered him removed to Sudan or, in the alternative, South Sudan. (*Id.* ¶ 11.) Petitioner again appealed the removal order, which the BIA dismissed on August 30, 2023. (*Id.*) In September 2023, the Government (1) determined there was no significant likelihood of removal in the reasonably foreseeable future to Sudan or South Sudan and (2) requested a travel document for Petitioner. (*Id.* ¶ 12.) On September 29, 2023, Petitioner filed a petition for review with the Third Circuit Court of Appeals. (*Id.* ¶ 13.) On October 16, 2023, given the insufficient likelihood of removal, the Government recommended that Petitioner be released from detention on an Order of Supervision ("OSUP"), subject to reporting conditions. (*Id.*; *see also* Pet. at 2 (alleging that Petitioner "was released in lieu of obtaining a judicial resolution of his *Zadvydas* claim").) The Third Circuit Court of Appeals denied Petitioner's petition for review on November 5, 2024. (Subero Decl. ¶ 15.) On June 12, 2026, the Government arrested Petitioner at the Anchorage International Airport following a tip regarding a final removal order issued in 2023.[2] (*Id.* ¶ 16.) The Government represents that, at the time of re-detention, it served Petitioner with a warrant for arrest, a notice of custody determination, and a notice of revocation of release stating that it detained Petitioner due to a change of circumstances and a significant likelihood of removal in the reasonably foreseeable future. (Subero Decl. ¶ 16; *see also* Wong Decl. ¶ 2, Ex. 4 (Re-detention Documents).) The next day, the

[2] Petitioner corroborates this account but asserts that his "apprehension was based on a case of mistaken identity[.]" (Pet. at 4.)

Government transferred Petitioner to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he has since remained while the Government continues to pursue a travel document to Sudan. (Subero Decl. ¶ 17.)

On September 24, 2026, Petitioner filed the instant petition asserting that his continued detention violates the Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). (Pet. at 4.) In addition to his immediate release under the same conditions as on his most recent release, Petitioner seeks four forms of prospective injunctive relief: (1) enjoining the Government from re-detaining him without first holding a hearing during which the Government is required to show changed circumstances; (2) establishing conditions governing future attempts to re-detain him; (3) enjoining the Government from seeking to remove him to a third country without notice and an opportunity to respond in compliance with statute and due process in reopened removal proceedings; and (4) enjoining the Government from removing Petitioner to a third country where he is likely to face imprisonment or other punishment upon arrival. (*Id.* at 34-35.) Briefing is complete and the petition is ripe for the court's review.

## III. ANALYSIS

The court first addresses the Government's continued detention authority over Petitioner before addressing Petitioner's requests for injunctive relief.

### A. Petitioner's Continued Detention is Unlawful.

The court adopts the holding and legal reasoning of *Twiringiyimana v. Blanche*, No. C26-2241JLR, 2026 WL 2607487, at *2-5 (W.D. Wash. Sept. 3, 2026) because the

material facts of this case are substantially similar. Under the framework established in *Zadvydas v. Davis*, once a noncitizen's post-removal-period detention exceeds the presumptive six-month threshold and they show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing. 533 U.S. at 701. Here, like the petitioner in *Twiringiyimana*, Petitioner has a prior criminal record, and the Government has detained him in excess of six months since his order of removal became final. (*See* Subero Decl. ¶¶ 11, 13, 16 (asserting Petitioner remained in immigration custody after his order of removal became final between August 30, 2023 and October 16, 2023 and again between June 12, 2026 until the date of this order)); *Twiringiyimana*, 2026 WL 2607487, at *2. Mirroring the circumstances in *Twiringiyimana*, the Government acknowledges that it has no valid travel document to facilitate Petitioner's removal and provides no estimate for when it will obtain one. *Twiringiyimana*, 2026 WL 2607487, at *2; (*see also* Subero Decl. ¶ 17 (noting that the Government is "working on obtaining" a travel document); Return (providing no time estimate for a travel document).) Consequently, the Government has failed to meet its burden to show a sufficient likelihood of removal in the reasonably foreseeable future.

Just like in *Twiringiyimana*, the unique political realities in Sudan and South Sudan make it unlikely that the Government will be able to remove the Petitioner to either country. In that case, the petitioner was born in Rwanda in 1991, subsequently entering the United States as a child refugee in 2007 and becoming a lawful permanent resident in 2009. *Twiringiyimana*, 2026 WL 2607487, at *1. Here, Petitioner argues

there is no significant likelihood of his removal because ongoing internal turmoil, localized violence, and economic collapse in Sudan and South Sudan prevent his safe return. (Pet. at 9-10.) As in *Twiringiyimana*, the government of the receiving country has explicitly refused to cooperate with ICE to facilitate removal. (*Id.*) Following this court's reasoning in *Twiringiyimana*, because the material circumstances governing Petitioner's confinement demonstrate that removal is not reasonably foreseeable, his continued detention at the NWIPC violates due process. *Twiringiyimana*, 2026 WL 2607487, at *2-5. The court therefore grants the petition for a writ of habeas corpus. *Id.* at *5 (ordering the petitioner's release from detention within 48 hours); *see also Manotham v. Scott*, No. C26-2993DGE, 2026 WL 3034231, at *4-*5 (W.D. Wash. Oct. 9, 2026) (compiling cases so ordering).

**B. The Court Grants the Requested Permanent Injunctive Relief.**

In additional to his immediate release, Petitioner requests four forms of permanent injunctive relief: (1) enjoining the Government from re-detaining him without first holding a hearing during which the Government is required to show changed circumstances; (2) establishing conditions governing future attempts to re-detain him; (3) enjoining the Government from seeking to remove him to a third country without notice and an opportunity to respond in compliance with statutory and due process mandates in reopened removal proceedings; and (4) enjoining the Government from removing Petitioner to a third country where he is likely to face imprisonment or other punishment upon arrival. (*See, e.g.*, Pet. at 34-35.) In its return, the Government contends that the court should deny these requests because they are either not ripe or

exceed the narrow scope of habeas review. (Return at 12-14.) The court disagrees with the Government and grants Petitioner's requests. In so holding, the court again explicitly relies on the reasoning provided in *Twiringiyimana*. *See* 2026 WL 2607487, at *2-*4 (granting the same relief as sought in the instant case).

First, the court determines that Petitioner has satisfied the customary four-factor test required for a permanent injunction. *See id*. at *3 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Second, Petitioner has shown that he has suffered irreparable harm—namely, the unlawful deprivation of his liberty— and that such harm is likely to recur absent injunctive relief to protect against further constitutional violations. The necessity of prospective relief is underscored by the Government's history of order violations in this District. Despite this court's repeated, unambiguous orders holding that the Government lacks the statutory and constitutional authority to indefinitely detain noncitizens for whom removal is not significantly likely, *see Manotham*, 2026 WL 3034231, at *5 (compiling cases so holding), the Government continues to engage in this exact pattern of unlawful re-detention. Because individual release order have not prevented the recurrent deprivation of liberty under similar circumstances, the court finds that the balance of hardships and the public interest favor a broader remedy. A permanent injunction is therefore necessary to safeguard Petitioner's due process rights and ensure future statutory compliance.

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the petition (Dkt. # 5). The court ORDERS that the Government and all its officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1) SHALL release Petitioner James Ayur Garang from detention within SEVENTY-TWO (72) hours pursuant to the conditions of his most recent OSUP;

(2) must not re-detain Petitioner without a prior hearing before a neutral decisionmaker, where the Government bears the burden to establish flight risk or danger to the community by clear and convincing evidence based on changed circumstances since his release;

(3) must not re-detain Petitioner unless the Government first obtains a valid travel document to Sudan or South Sudan, provides copies to Petitioner and his counsel, and allows Petitioner two months to depart voluntarily, provided that concrete arrangements for removal in the reasonably foreseeable future are in place and Petitioner fails to depart;

(4) must not remove or attempt to remove Petitioner to a third country without providing prior notice and a meaningful opportunity to respond within reopened removal proceedings; and

//

//

//

//

(5) are strictly prohibited from removing or attempting to remove Petitioner to any third country where he faces a likelihood of imprisonment upon arrival.

Dated this 23rd day of October, 2026.

JAMES L. ROBART
United States District Judge